Thank you. All right, thank you. Thank you to both council for your helpful arguments. The case just argued is submitted for decision by the court. Our final case on calendar for argument today is Hope Medical Enterprises v. Fagron Compounding Services. Council for appellants, are you ready? Yes, your honor, I am. Good afternoon, good morning, your honors. I'm may it please the court. I'm Catherine Giddings of Ackerman and I'm here today on behalf of our clients collectively referred to as Fagron and I'd like to reserve four minutes for rebuttal. All right, please watch the clock. Yes, your honor, I will do that. Your honors, as you know, there are two issues before you. The first is jurisdiction and the second is preemption. And I would suggest to you that jurisdiction is actually fairly straightforward. Fagron asked the district court to rescind the injunction based on two new circumstances. One, the FDA issued a declaration essentially saying, hey, we heavily regulate these activities and we've issued guidance. We're the only ones with enforcement authority and be careful because when a private party seeks to enforce the FDCA, that could cause problems. Then Judge Snyder's almost identical cases based on preemption, creating an intradistrict conflict. Now, these are circumstances we think that any district court judge would want to know about. The judge may disagree, but the judge should at least have that information to determine the injunction should still stand. And can I try to break that a little bit? Are you saying that each one of those things by itself would be enough? In other words, the district court cases from the other district judge in the same district, that that by itself would have been enough to trigger appellate jurisdiction here? Well, your honors, I would suggest that either one of them would be sufficient. But at the same time, when you have both of them at the same time, then I think that that is a double making sure that the circumstances have changed. And I would think that a district court judge would want to know that there is now an intradistrict. Well, whether the district judge would want to know and whether that's enough to give you the basis for appellate jurisdiction might be two different things. So is it significant that those cases are in the same district? Let's say they had come from the eastern district of Missouri or something, but would that have been enough? And that's all you had. Would that have been enough? Would that be enough to trigger appellate jurisdiction? Your honor, I believe that it's most important that it is in the same district here because it did create an intradistrict conflict. There were other cases that somewhat disagreed, but not in that in that circuit. And I think so. I mean, let me now ask you then about the affidavit. So is there something about that affidavit or the declaration from the FDA representative that it wouldn't have been available, that that kind of testimony wouldn't have been available when you folks litigated the preliminary injunction in your case? Your honor, the law, the law was that the FDA had its own enforcement authority. However, what their position is, is that under the state law, you have to have federal approval and that we didn't have federal approval because the drug wasn't approved. And what we're saying is that the 503A compounding pharmacies and 503B outsourcing facilities, the district court, the FDA came out and said, we are reviewing these things and we are heavily regulating them. And I think that that is information that the judge would want to know to take it into consideration. I guess my question to you is, I mean, it seems to me that if you're going to rely on new evidence or supposedly new evidence, there ought to be some sort of a due diligence aspect to it here. So is there some reason that that wouldn't have been available to you in your case, if you had gone and asked the FDA, like the litigant in the other case did? Your honors, the only thing I can tell you is that it is new circumstances. And it's certainly the nexus cases are new circumstances. And I would call to your that have been cited that show that a new policy study, that students graduated, that there's new evidence of parties, confidential information and trade secret. There's a fluid situation for the FDA, which is what we have here. A modification of a disclaimer on a packaging is sufficient. All of those, and I can give you the case sites for every single one of those, have been found to be sufficient to best jurisdiction. And so I believe that creating an inter-district conflict is certainly new. And then having the FDA come in and state, these are new facts that the FDA is stating that we are in the process of evaluating areas involving these two types of compounding pharmacies and outsourcing facilities. Remember, it's a very, very low bar to actually best jurisdiction. And the judge here did not say, oh, I'm not going to hear this because you're re-arguing it. I'm not going to hear it because you didn't meet the threshold. If you look at the judge's order at ER 643 in the sealed volume, you will see that the district court itself evaluated the two new circumstances and said it disagreed with the nexus decisions and found them distinguishable, which we believe was wrong, and ruled that the FDA declarations did not change its mind. And you will note in that order that even though it addresses summary judgment as well as the preliminary injunction, it's got, it's real important when you look at that order, that there is a section entitled motion for reconsideration at 683-684, but then look back at the motion on ER 665, and it also talks about the reconsideration there. So it goes through and does a whole new analysis and states that these circumstances do not change its position. And so I would, and I would suggest to you that under similar circumstances, in the Credit Sui versus Grunewald case, once there was a change, the court came in, this court came in and made a determination as to whether there was preemption. So I think that it's very important. If I can interrupt here. The Central District has around 30 judges. I mean, it can't be that just because one judge disagrees with another judge among 30 judges in the Central District that that's enough. Especially here, it just appears one judge disagreed with another judge's reading of Buchman and Perez. I mean, it's just, you know, a disagreement between two judges about how to read Supreme Court and Ninth Circuit precedents. I'm struggling how that's enough to be changed circumstances, because that happens all the time. Well, your honors, I mean, you also have the FDA declaration, but I would suggest to you that when you look at all of these cases, for instance, the Ortho Pharma Corporation case versus the Amgen says there was a fluid situation before the FDA, and that was sufficient to allow the court to declare. It shows it's a fluid situation. And then you had, go ahead. The FDA declaration, I mean, what, I mean, does it say that much? I mean, first of all, it's like it's just one person, but, you know, it seems like just standard comment from a government agency of, gee, we're looking into it. We're working on it. And it really doesn't seem to say much. I mean, I think that's pretty much what every government official says if they're into it. And, you know, don't worry. Actually, your honor, I think it goes to the very heart of the situation, because as you know, in Buchwald, the court stated in Buchwald that you can't have states enforcing and interpreting federal law. And Perez, this says that you're not, if an issue is currently being reviewed and determined by the FDA, then it's something that you can't be bringing in action to enforce the FDA. And, you know, look at what the injunction here did. You know, it's directing that the defendants provide a valid prescription in compliance with 503A and B, and that it requires an attestation specifically indicating the compounded product does not contain potassium, clinical difference statements. These are all explicit things that the FDA regulates. And so the FDA is coming in and saying, this is a situation that the FDA oversees. So I think it goes to the heart of the whole preemption issue here. And your honors, I would also, I would strongly urge you that if you look at the different cases, that even when they say that they have, if it impacts the fairness, where you have some, you look at this, this court's case in US versus Washington, look at the California versus EPA, it says the standards pliable, and you must be able to do justice. When you're in the same district, and you're letting some people, their claims are totally dismissed, while others are not, that's totally inequitable. So as to the jurisdiction issue, I would, I would contend that that is sufficient. Then as to the, to best jurisdiction in the court, and as to the preemption issue, I think regardless of how Hope characterizes its arguments, all of its claims rise and fall on whether Febron is complying with the FDCA. And both the Supreme Court and this court have claimed that the plaintiff's claims are impliedly preempted under conflict preemption, if the plaintiff is solely attempting to use state law to police the FDCA, and the claim is based solely on a violation of the FDCA's requirements, because enforcement of the FDCA is vested solely in the FDA. And Buckman says that a claim is preempted where the claim originates from, is governed by, and terminates according to the FDCA. And Perez follows Buckman and says that a party cannot be seeking to enforce the FDA, especially where the conduct of issue is reviewed and determined by the FDA. Now these and other cases tell us that if you are suing under a state law, cause of action, the claims under the state law can't arise solely from the FDCA. But that, that's exactly what you have here. Hope, this is what's really interesting. Hope has alleged and repeatedly states throughout its brief, that Fergran is violating both federal FDCA law and state health and UCO laws, because it's selling a drug for which it has not received pre-market approval from the FDA. And yet the FDA is, has exceptions. And it says, well, it doesn't matter as long as there's not approval. And so, and I would like to get into the record. I see that I'm into my bottle time, but I would like to put in some distinguishing factors because the court here relied on Allergan versus Athena from the federal circuit. And I would just give this court some distinguishing factors. In Allergan, the FDA is not, had not regulated or taken any actions as to the drug. And here 503A and 503B regulate Fergran's compounded drug. Hope's complaint even sets out that the FDA has inspected Fergran's facilities on numerous occasions. In Allergan, an exception from drug approval was not an issue, but here it is. In Allergan, the claim did not arise solely from a failure to follow the FDCA, but here it does. And in Allergan, there was not essentially a copy provision. And here, not only is that an issue, but whether something is or is not essentially a copy is to be determined solely by the FDA. Your honors. And so I see that I'm into my rebuttal time, so I will save the rest of my time for rebuttal. All right. Thank you, counsel. Counsel for Apple, please. Thank you, your honors. Good morning. May it please the court. Jeffrey buck holds for hope. Your honors, I'll start with jurisdiction and the questions, Judge Lee and Judge Kennelly that you asked about that standard. This court has set for whether a motion to dissolve an injunction gives rise to an appealable order is whether the party trying to get the injunction dissolved showed a significant change in facts or law. There's a number of things I'd like to point out here about why that's not the case. So first of all, it's, I think, undisputed and indisputable that motions for reconsideration are different from motions to dissolve and don't give rise to an appealable order. And here, that's what the defendants called their motion. And the defendants were well represented. They didn't call their motion a motion for reconsideration by sort of inadvertence or oversight. They called it that because that's what it was in substance. And the motion for reconsideration was filed together with their motion for summary judgment on the preemption issue. And that's important because motion for motion to dissolve an injunction presumes that the injunction might have been appropriate when entered, but has become inequitable. It's no to grant any kind of premise like that. They were arguing that this case was and always was barred by preemption. That's what they said in their motion for summary judgment filed at the same time as their motion for reconsideration. So it's not an accident that what they filed was a motion for reconsideration. And they didn't just use that word once. That was the caption of it. It was the heading in the paper. And they used reconsideration multiple times, and they never used dissolve or any variant of dissolve. They knew what they were doing. That's what they chose to do. And I don't think there's any reason why this court should bail them out by now recharacterizing their own motion as something other than what they called it. What I'd also like to do is respond to Your Honor's questions about whether these really were significant changes in facts or law, which is the standard this court has set. And they're not. Judge Lee, as you point out, there's 30 judges in the district. You know, whether it's a good thing or a bad thing, it's just the way the system works. Judges disagree with each other at the same level of the court system all the time inside the district and outside the district. And my friend said that it mattered that it was an intra-district conflict here as opposed to a new decision from somewhere else in the country. But there's no jurisprudential reason why that should be so. A district judge's decision has no stare decisis effect, has no presidential value, whether it's from the same district or a different district. So every time there's something new, if a party could move to dissolve an injunction and give rise to an appeal that it had chosen, actually, let me make this point clear. They could have appealed the plenary injunction when it was entered. They had the right to do that. For whatever reason, they chose not to. And so the whole point of this analysis of whether a motion to dissolve really is a motion to dissolve in substance, or whether the court should treat it as the motion for reconsideration that doesn't give rise to an appeal, is to prevent parties from helping themselves to repeated, delayed appeals of preliminary injunction orders. Well, here they could have appealed the P.I. when it was entered. They chose not to. And they said that there are these new developments that, as a matter of law, are simply not significant to rise to the level of justifying a motion to dissolve. In addition to the fact that Judge Carney, that his decisions in the Nexus cases are just decisions by a fellow district judge that, as such, don't change the law and weren't controlling, I also want to talk about the declaration from FDA. The court will see, I believe my friend spoke imprecisely in saying that FDA's declaration that they relied on said that FDA was revisiting its approach to these activities. This is important. The declaration that FDA filed in the Nexus cases was about FDA's approach to compounding starting from finished FDA-approved products rather than bulk drug substances. The declaration is at BR 49. Paragraphs 8 and 9 make clear that that's the focus of the declaration and all the declaration is about. The FDCA distinguishes between two kinds of compounding. Compounding that starts from bulk drug substances, think of like a drum of a chemical, active ingredient that you then manufacture the drug from, or compounding from a finished FDA-approved drug product. Because it's important for compounding to be legitimately compounding and not just manufacturing unapproved drugs in the guise of compounding, when you start from a bulk drug substance as opposed to the finished FDA drug product, it's different and it raises additional concerns. That's what FDA has said. There's a different statute and an entirely different regime from FDA that governs finished sterile compounding as opposed to bulk drug compounding. This case is only about bulk drug compounding, bulk drug substance compounding. It has nothing to do with compounding from finished FDA-approved drugs. That's not what this is about. Basically, what you're saying is that the affidavit that was submitted in the other case concerned the other type of drug compounding, not the one that was involved in this case. Then for that reason, it really isn't a changed drug. That's exactly right. That's what Judge Snyder found in footnote 8 at page 668 of the excerpts of record. In her decision, she points out that NEXIS and the declaration from FDA is distinguishable for that exact reason. The FDA declaration in NEXIS and Judge Kearney's decisions in NEXIS, whether taken alone or in combination, and they're not really different things, they're all part of the same case, they don't rise to the level of a significant change in facts or law. My friend said the standard for jurisdiction for a denial of a motion to dissolve is a very, very low bar, I believe, is the word she used. Again, first of all, this wasn't a motion to dissolve. That's not what they filed. They chose to file what they chose to file. If this court were to recharacterize it as a motion to dissolve in order to give rise to fellow jurisdiction, I think it's worth pausing on whether it really is and should be a very, very low bar. Because if you could help yourself to a belated appeal of a preliminary injunction by filing a motion to dissolve that is based on an insignificant new development, well, then you could always do that. The world continues to turn after a PI is entered. There's always something new. It's literally being new is all that's required. There's always something new that you could point to. And so if that's all that was required to give rise to an appealable order, then this court would see a lot of very insubstantial appeals of denials of motions to dissolve in a way that I don't think is how the system is supposed to work, or either this court or the district judges would want the system to work. And I think this is a good example of a motion for reconsideration that really was the motion for reconsideration and not a motion to dissolve, but therefore doesn't give rise to appellate jurisdiction. I want to mention two of how jurisdiction works here. My friend referred to California against EPA. This is the landfill emissions case this court decided last year. That's a great illustration of when a motion to dissolve really is a motion to dissolve and is justified as such and gives rise to appellate jurisdiction. There, the EPA regulation that was being challenged changed. The EPA promulgated a new rule during the pendency of the case. So the law being challenged, the thing being challenged in the lawsuit changed. So of course there was a basis to go to the court and say that's a significant new development. And another case that equally illustrates that is this court's recent decision in Karnosky against Trump, where the Trump administration initially in 2017 issued a policy about transgender persons in military service. There was a preliminary injunction entered against enforcement of that policy. And then the administration issued a new policy, a 2018 policy, that was different both in terms of the procedures that led to its promulgation and in terms of its substance. And the district court refused to entertain a motion to dissolve the injunction as it related to the new policy. This court reversed and said it's a new policy. We have to decide on the merits of the new policy whether it should be enjoined. You can't just assume that the injunction against the old policy carries over to a new different policy. Those are significant new developments. That illustrates what a motion to dissolve is for. And this case is just nothing like that. You have non-binding decisions that are distinguishable, a declaration from FDA that is not on point. And the district judge, you know, here Judge Snyder could have just said I'm not going to entertain this at all because there's no basis under Rule 7-18 for reconsideration. Instead she actually took the despite the busy docket that the courts in that district have and grappled with the motion that was filed and explained that the Nexus case was distinguishable, explained that it wasn't really a new development that should change anything. So there's no basis for this court to reverse that under local Rule 7-18 that governs motions for reconsideration, even if this court had jurisdiction, which we don't think the court had. Let me just say one more word about the abuse of discretion standard and Rule 7-18, because if the court does have jurisdiction, the next question would be was it an abuse of discretion for Judge Snyder to deny reconsideration? And the defendants in their brief on appeal seem to say that 7-18 isn't the standard that applies. Well, that's the standard they invoked in their motion. So they can't now ask this court to apply some other standard and say the district court erred by applying 7-18. Their own motion invoked 7-18. And so that's what the district court applied. And there's no basis to say that that was an abuse of discretion. And under 7-18, the new authority that would justify reconsideration has to be controlling, as we've discussed, the new authority such as it was that was invoked here didn't come close to rising to the level of being controlling. And so there was no abuse of discretion. For those reasons, we think the court should, first of all, dismiss the appeal for lack of jurisdiction. And second, if the court were to reach the merits, were to exercise jurisdiction, then hold that the denial of reconsideration was not an abuse of discretion. And I don't think the court really has any basis in this procedural posture to decide the preemption issue straight up the way my friend on the other side seems to want the court to do. We filed a 28-J letter alerting the court that Judge Snyder has since held a trial. This was an interlocutory appeal. So the case continued. She held a trial. And she said after the trial that she's going to enter a permanent injunction. That hasn't happened yet. So we're not asking the court to do anything now about that. But we thought the court would want to know that Judge Snyder has said that she has ruled for us on the merits after a trial and has said that she will enter a permanent injunction. When exactly she'll do that, we, of course, don't know. But we thought the court would want to know that that was coming rather than being surprised if that were to happen and the court were not to know that that was in the works. So we think the court should dismiss this appeal for lack of jurisdiction. Failing that, the court should hold that it was not an abuse of discretion to deny reconsideration. I'd be happy to address any questions your honors have about the preemption issue. But as I've said, I really don't think that issue is before the court for the reasons that I've already discussed. Given that it's already afternoon, I'll yield the balance of my time if honors have no further questions. It appears not. Rebuttal. Thank you, your honors. Yes, your honor. The first of all, I'd like to state that the what it's titled is irrelevant under Greenwald. You look to what it actually asked the court to do. And if you look at it says rescind and clearly we're asking the judge we were asking the judge to rescind the injunction. We can we do believe that the circumstances were inequitable. I would like to clear up when he when my opposing counsel states that the declaration to ER 49 only addresses sterile to sterile compounding rather than bulk substance. If you will look at Nexus Pharmaceuticals versus U.S. 2021 that was filed with the court. It says that it that the declaration, the FDA issued a second declaration talking about bulk drug substances. So it is not fair to say that the deck that the FDA has not issued a declaration as to this case. And when you look at an abuse of discretion, when a judge airs as a matter of law, then it is appropriate for the court to review what the judge has done from the preemption standpoint. We believe that these are sufficient circumstances. Opposing counsel used the word significant. However, remember for jurisdiction, it is not significant circumstances to review it. It is significant under some of the cases when you go to see whether an injunction that prohibits conduct that prohibits conduct should be an injunction that prohibits conduct should be such that you have jurisdiction to look at that and then you have jurisdiction to change the underlying injunction. But here it's a matter of law. So you don't have to go there. So your honors with that, this case is about anti-competition. It is not about it is not about state law. And we would ask this court to accept jurisdiction and find that the claims are preempted. Thank you. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case is argued is submitted for decision by the court.
judges: RAWLINSON, LEE, Kennelly